United States District Court
Southern District of Texas
FILED

JUL 13 2017

Clerk of Court

United States District Court
Southern District of Texas
**ENTERED**
July 14, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| OLGA MENDEZ<br>    Plaintiff | § § § § | |
| vs. | § § § | CIVIL ACTION NO. M-14-715 |
| NANCY A. BERRYHILL,<br>ACTING COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION<br>    Defendant | § § § § | |

### REPORT & RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g). This case was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b). Pending before the Court are the parties' motions for summary judgment, with briefs in support, and a response by the Commissioner. (Dkt. Entry Nos. 15–19.) This case is ripe for disposition on the record.

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 17) be **GRANTED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 15) be **DENIED**, and the Commissioner's final decision be **REVERSED AND REMANDED** for proceedings consistent with the findings and recommendations in this report. It is further recommended that this civil case be closed.

## I. BACKGROUND

Plaintiff filed for disability insurance and SSI on October 3, 2011, alleging an onset date of June 15, 2009. (Dkt. Entry No. 18 at 1.)[1] Plaintiff's application was denied initially and upon reconsideration. (*Id.*) An administrative Law Judge ("ALJ") issued an unfavorable opinion denying benefits on April 1, 2013, and the Appeals Council denied Plaintiff's request to review the case on March 27, 2014. (*Id.* at 1–2.)

As of the hearing date, Plaintiff, who does not speak English, was closely approaching advanced age (between ages 50-54), with a sixth-grade education and past relevant work as a seamstress and a laborer. (*Id.* at 1.)

The record reflects that Plaintiff's alleged impairments included impaired vision, type 2 diabetes mellitus, hyperlipidemia, hypertension, anemia, idiopathic thrombocytopenic purpura (ITP), a benign right breast lesion, a cognitive disorder, anxiety not otherwise specified (NOS), and depression. (*See id.* at 2; R. 54.)

## II. STANDARD OF REVIEW

So long as the courts provide each party the opportunity to present his contentions in support of his claim and enter judgment only on the basis of the pleadings and transcript of the record, summary judgment is an acceptable device in cases seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) of the Act. *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981). However, this Court's review of the Commissioner's final decision to deny benefits under the Act, per 42 U.S.C. § 405(g), is limited to

---

[1] Page numbers for docket entries refer to the electronically-assigned (PDF) page numbers via CM-ECF, upon opening the entire file.

two inquiries: (1) whether the proper legal standards were used in evaluating the evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Under the second permissible inquiry, substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is more than a scintilla, but less than a preponderance. *Id.* If the findings of the Commissioner are supported by substantial evidence in the record as a whole, the findings are conclusive and must be affirmed. *Brown*, 192 F.3d at 496. Under this standard of review, this Court must carefully scrutinize the record to determine if such evidence is present. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam). However, evidentiary conflicts are for the Commissioner, not the courts, to resolve, and courts "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our own judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Brown*, 192 F.3d at 496 (alteration in original) (quoting *Johnson*, 864 F.2d at 343). This Court's judicial review is deferential to the Commissioner's decision, but without being so obsequious that it renders the review meaningless. *Id.*

Although the reviewing court does not reweigh the evidence nor try the issues de novo, the court does look at the evidence in determining whether substantial evidence exists, *e.g.*, *Leggett*, 67 F.3d at 564 (explaining that substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion), and, where relevant, in determining whether errors are harmful or prejudicial, *see, e.g.*, *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) ("[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such

3

improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (explaining that, where an ALJ fails to fairly develop the record and facts, the claimant must show prejudice to justify a remand, which requires a showing the ALJ could and would have adduced evidence that might have altered the result, had the ALJ developed the record fairly and fully).

### III. ESTABLISHING DISABILITY

A plaintiff is not entitled to benefits under Titles II and XVI unless he is "disabled" as defined by the Act. 42 U.S.C. § 423 (d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459–61 (1983). The law and regulations governing benefits under both Titles are the same. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A sequential five-step approach is used to determine whether the claimant qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving the first four steps to show that: (1) he is not presently engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment is either listed or equivalent to an impairment listed in the appendix to the regulations; and, (4) if the impairment is not equivalent to one listed in the regulations, the impairment still prevents him from performing past relevant work. *Leggett*, 67 F.3d at 564 n.2. Once the claimant proves the first four steps, the burden shifts to the Commissioner to establish that the claimant can perform substantial gainful employment available in the national economy. *Greenspan*, 38 F.3d at 236–37. The burden then shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d

448, 453 (5th Cir. 2000). A determination at any step that the claimant is or is not disabled within the meaning of the Act ends the inquiry. *Leggett*, 67 F.3d at 564.

In this case, the ALJ made the following findings:

(1) Plaintiff has not engaged in substantial gainful activity since the alleged onset (R. 13);

(2) Plaintiff's type 2 diabetes mellitus, hyperlipidemia, hypertension, anemia, idiopathic thrombocytopenic purpura (ITP), benign right breast lesion, cognitive disorder, anxiety not otherwise specified (NOS), and depression are severe impairments, while there was no evidence at all of the alleged visual impairment and, therefore, was not a severe impairment (R. 13);

(3) However, the ALJ determined that the medically determinable severe impairments do not meet or medically equal one of the impairments listed in the appendix to the regulations (R. 14);

(4) The ALJ found (R. 16) that Plaintiff retains the residual functional capacity ("RFC") to perform medium exertion work, except that Plaintiff cannot climb ladders and can only occasionally climb ramps. She can frequently balance, stoop, kneel crouch, and crawl and is able to constantly reach, handle, and finger bilaterally. At the same time, she must avoid moving machinery, unprotected heights, and open flames. The ALJ also limited her to simple, routine tasks and low stress jobs that require only occasional decision-making and changes in work setting. The ALJ then concluded that Plaintiff is unable to perform any past relevant work; and,

(5) Relying on the testimony of a vocational expert and considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including hand packager and Cleaner 2. (R. 24–25.)

The ALJ then found that Plaintiff has not been under a disability from the alleged onset date through the date of the ALJ's decision. (R. 25.)

## IV. APPLICABLE LAW & ANALYSIS

The undersigned does not summarize the entirety of the administrative proceedings and record. Rather, the undersigned addresses the primary issues and evidence disputed by the parties.[2] The undersigned points out that this case does not concern Plaintiff's physical impairments and related symptoms; rather, the issue in this case revolves around Plaintiff's mental health limitations.

Plaintiff raises one primary argument. She argues that the ALJ committed legal error by failing to properly weigh the medical opinion and findings of a medical psychologist, Dr. Michael Hefferman, Ph.D., who evaluated Plaintiff as a consultative examiner at the Agency's request, and the ALJ failed to explain in the written decision the weight he accorded that evidence. (Dkt. Entry No. 18 at 8–9.)

Plaintiff accurately describes Dr. Hefferman's report (R. 310–312), which included a Mental Status Exam, with his attendant findings and conclusions about the nature and severity of Plaintiff's mental condition, as well as a diagnosis and prognosis, as follows:

> Dr. Hefferman performed a psychological Consultative Exam on January 12, 2012. Plaintiff reported that she was not working because of memory loss and constant tiredness, which she attributed to her diabetes. Plaintiff was terminated from her most recent job in 2010, and had not attempted to work since. Dr. Hefferman noted that the "[h]istory report was sparse due to cognitive restrictions of the client." Plaintiff completed the 6th grade with below average grades. Dr. Hefferman concluded that Plaintiff's attention and concentration are impaired, as evidenced by her inability to concentrate throughout the interview without interruptions, the fact

---

[2] Initially in this instant case, the Commissioner filed a motion to dismiss this action, arguing it was untimely filed. Plaintiff responded to the Commissioner's motion. Plaintiff argued and provided evidence that the Clerk's Office caused the delay by reopening this case as a miscellaneous action because Plaintiff was applying for leave to proceed IFP (and called counsel for Plaintiff to tell him he should not have filed this action as a civil case), and, in doing so, the Clerk's Office entered the incorrect filing date when it reopened this case as a miscellaneous action. Subsequently, the Commissioner moved to withdraw and vacate the motion to dismiss for untimeliness, which the undersigned granted. (Dkt. Entry Nos. 11; 14.)

> that she frequently asked for questions to be repeated, her inability to perform serial subtraction from 100 by 3s and 7s, as well as her below normal rate of speed counting backwards from 20. Further, he noted that Plaintiff's thoughts proceeded at below normal rate "with evidence of retarded or inhibited thinking." Likewise, Dr. Hefferman observed "[g]lobal reduction in quantity of thoughts[.]" In his opinion, Plaintiff's memory is impaired, as evidenced by Plaintiff's inability to recall: Dr. Hefferman's name, concurrent news events, the last three presidents, or three objects in the room after a five-minute delay. Further, Plaintiff could only repeat four digits forward and none backward. Dr. Hefferman also stated that Plaintiff's cognition is inadequate based on sensorium and cognition testing, and her insight seems impaired. Based on his examination of Plaintiff, Dr. Hefferman diagnosed her with a cognitive disorder and opined that Plaintiff had a global assessment of functioning (GAF) score of 44.
>
> His prognosis was "guarded given multiple cognitive deficits." He stated that while Plaintiff understood the meaning of filing for benefits, she would not be capable of managing benefit payments.

(Dkt. Entry No. 18 at 6–8.)

Plaintiff argues that an ALJ's written decision must include a discussion of all the evidence and must clearly set forth the reasons upon which it is based to provide, at a minimum, a reviewing court with a thorough explanation of the ALJ's reasoning, a requirement consistent with Fifth Circuit precedent and the regulations. (*Id.* at 9.) Plaintiff argues that an ALJ may only reject opinion evidence on the basis of contrary medical evidence, may not ignore an opinion, reject an opinion for no reason at all, or ignore an opinion for "bad reasons." (*Id.*) Plaintiff continues by explaining that, if an ALJ accepts the medical opinion, the RFC must address the limitation, and, if not, must explain why it was excluded and provide "good reasons" for doing so. (*Id.*) This did not occur in this case, according to Plaintiff. (*Id.*)

Plaintiff concedes that the ALJ did *mention* the results of Dr. Hefferman's consultative examination. (*Id.*) However, Plaintiff argues that the ALJ does not state the degree, if any, to which he relied on Dr. Hefferman's findings, with the exception of the GAF score of 44, to which the ALJ

assigned little weight, stating that "unless specifically indicated for the past year, the GAF score is for the current level of functioning and such scores can result in major variations." (*Id.*) Further, Plaintiff notes that the ALJ wrote that the GAF has no direct correlation to the severity requirements in the mental disorder listings. (*Id.*)

Plaintiff argues that the legal error was not harmless because it calls into question the substantiality of the evidence supporting the RFC and the findings made at Step 5 and precludes meaningful judicial review. Plaintiff points out that the Agency defines the "basic mental demands" of competitive, remunerative, unskilled work as including "the abilities (on a sustained basis) . . . to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting" and that a substantial loss of an ability to meet any of these demands may warrant a finding of disabled. (*Id.* at 12, citing and quoting SSR 85-15.)

According to Plaintiff, the RFC in this case simply does not account for all of the limitations contained within Dr. Hefferman's opinion, such as the retarded or inhibited thinking and reduction in quantity of thoughts, which plainly implicate Plaintiff's ability to perform sustained work. (*Id.*) Moreover, Plaintiff argues, even if *partially* credited, the limitations contained within Dr. Hefferman's opinion are nonexertional in nature and therefore would need to be considered by a vocational expert to determine whether they further erode Plaintiff's ability to work at Step 5. (*Id.*)

In response, the Commissioner argues that Plaintiff acknowledges the ALJ considered Dr. Hefferman's report and findings. (Dkt. Entry No. 19 at 1.) However, the Commissioner argues that the ALJ properly determined Plaintiff's RFC. (*Id.* at 2.) The Commissioner points out that the RFC is an administrative assessment based on the totality of the evidence regarding the extent to which a claimant's impairments and related symptoms affect her capacity to perform work-related

activities, and that, while an ALJ considers opinions from acceptable medical sources on such issues as whether a claimant is disabled and a claimant's RFC, the final responsibility for deciding these issues is reserved for the Commissioner under the Agency's rules and regulations, explaining that medical source statements are not determinative. (*Id.*) Further, the Commissioner argues that the ALJ is charged with weighing the evidence, including medical opinions, and making findings based on the evidence. (*Id.*) The Commisioner points out that the ALJ stated that he carefully considered the evidence, and there is no reason for the Court to assume otherwise. (*Id.* at 2–3.)

The Commmissioner argues that it is apparent from the ALJ's written decision that he did not rely on Dr. Hefferman's findings and gave "little weight" to the GAF score. (*Id.* at 3.) Requiring an ALJ to specifically articulate whether he expressly accepts or rejects certain evidence is a rigid approach eschewed by the Fifth Circuit, according to the Commissioner. (*Id.*)

The Commissoner points to the other record evidence the ALJ relied on to reach his findings and final decision. For example, after Dr. Heffernan's January 2012 report, the ALJ noted that, in September 2012, Plaintiff reported to her regular clinic that her sixteen-year old daughter was pregnant, denied intentions of harming herself or others, and had normal mood and affect with intact recent and remote memory. (*Id.*) In addition, the ALJ noted that Plaintiff had held jobs in the past. (*Id.*) Also, the ALJ considered the opinions of the state agency medical consultants and afforded them significant weight, and the Commissioner contends that state agency physicians are highly qualified experts in disability evaluation. (*Id.*) The Commissioner points out that the ALJ noted that the non-examining state agency mental consultant, who had reviewed the record and Dr. Heffernan's January 2012 consultative examination, opined in February 2012 that Plaintiff could understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for

9

extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting, and the Commissioner contends that the ALJ's RFC finding that Plaintiff's work should be limited to simple, routine tasks and low stress (occasional decision-making and only occasional changes in the work setting) sufficiently incorporates this opinion. (*Id.* at 3–4.)

The undersigned finds that the ALJ erred by failing to explain the weight he gave to Dr. Hefferman's evaluation or his reasoning with regard to this evidence and that the error was not harmless. The Commissioner raises accurate legal principles and relevant arguments, but they are too general to fit the facts of this case. In this case, it is not enough for the Commissioner to argue that the ALJ did not err because there was other evidence the ALJ relied on in making his findings because the ALJ *did err*, and, in addition, this is a situation where the ALJ's overall reasoning is not clear from the written decision.[3] *See Newton*, 209 F.3d at 455 ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision."). It is not enough to argue that the ALJ gave significant weight to the non-examining agency physicians and summarized the report by Dr. Hefferman because the issue here is the ALJ's complete failure to explain the weight he accorded to Dr. Hefferman's report or his reasoning about the report, which was favorable to Plaintiff. It is not enough for the Commissioner to argue that the ALJ is the fact-finder charged with weighing the evidence and determining the RFC and the claimant's disability status, when the ALJ glossed over favorable evidence.

---

[3] There are cases where the ALJ's written decision is clear enough in order to determine on judicial review whether substantial evidence supports the decision and whether there was a legal error, but that it is not harmful enough to warrant a remand. This is a close case, but the undersigned finds that the error and harm are pronounced enough to warrant a remand under relevant case law and the regulations.

The regulations require the Commissioner to evaluate every medical opinion it receives, regardless of its source. 20 C.F.R. § 404.1527(d). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Generally, more weight is given to an opinion of a treating physician than to those given by other medical professionals, such as examining physicians and medical experts. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). Under 20 C.F.R. § 404.1527(b), the regulation provides that: "In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." At the same time, an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion, *Newton*, 209 F.3d at 455 (citation omitted), but an "ALJ cannot reject a medical opinion without an explanation," *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). Also, the regulations states that: "If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will *weigh* the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." 20 C.F.R. § 404.1520b (emphasis added).

In *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017), the Fifth Circuit reiterated the rule from *Loza v. Apfel*, stating that "fundamentally, an 'ALJ cannot reject a medical opinion without an explanation.'" *Id.* In *Kneeland*, the court concluded that the ALJ had legally erred by failing to mention an examining physician's opinion and failing to provide an explanation for the amount of weight accorded to it in determining the RFC, which, the court found, undermined the substantiality of the evidence supporting the RFC, and the court explained that reports by non-examining

11

physicians [*e.g.*, the reviewing physicians who complete forms and give opinions based on the written record], "taken alone, would not be substantial evidence on which to base an administrative decision." *Id.* at 759–61 (internal quotations and citation omitted).

The court also concluded the error was not harmless because, if the examiner's opinion was credited, in whole or in part, it would affect the RFC determination, which, in turn, would likely have affected the jobs available at step five of the sequential evaluation process, possibly leading to a different outcome. *Id.* at 762.

At the same time, the court explained that an error of the nature does not mean a court should necessarily conclude the ALJ erred in finding that the claimant is not disabled. *Id.* The court instructed, that, "[t]he ALJ must determine that on remand, upon completing a holistic evaluation of [the claimant's] impairments that takes into account the physical, cognitive, and psychological evidence and explaining what weight he affords the various medical opinions." *Id.*

In this instant case, the ALJ failed entirely to explain the weight, if any, he afforded Dr. Hefferman's report or explain his reasoning with regard to Dr. Hefferman's findings, except for the ALJ's decision to afford little weight to Dr. Hefferman's GAF score for Plaintiff. Based on the ALJ's written decision, it is not evident at all whether the ALJ rejected in whole or credited in part Dr. Hefferman's opinion/findings about Plaintiff's mental impairment and limitations—particularly those relating to her cognitive disorder and attendant deficits, as well as her impaired attention and concentration (which differ from the non-examining physician opinions). In other words, there is no way of truly figuring out how the ALJ weighed and resolved the evidentiary import of Dr. Hefferman's report because the ALJ failed to explain it. As Plaintiff correctly argues, although the ALJ summarized Dr. Hefferman's report in the written decision, the rules, regulations, and case law

make clear that the ALJ must give some type of explanation about the weight he gives to a medical opinion and, as a general matter, to explain his findings and resolution of the evidence with sufficient clarity in the written decision for the purposes of further review. *See, e.g., Kneeland*, 850 F.3d at 761 ("And it should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion."); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that bare conclusions are sometimes beyond meaningful judicial review but also acknowledging that an ALJ is not required to do an exhaustive point-by-point discussion of the evidence); *Loza*, 219 F.3d at 395 (explaining that the ALJ cannot reject a medical opinion without an explanation); Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (July 2, 1996) (explaining that in determining the RFC, the adjudicator must also *explain* how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.") (emphasis added); *see also* 20 C.F.R. § 404.1545(3)(a) (explaining that the assessment of the RFC is based on all of the relevant medical and other evidence and explaining that before making a determination that you are not disabled, "we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary"). The ALJ's error is also problematic given that he gave significant, arguably dispositive, weight to the opinions of the non-examining state physician reviewers about Plaintiff's mental limitations and her RFC, even though they never examined Plaintiff. The ALJ incorporated verbatim the RFC recommendations about Plaintiff's mental abilities offered by the non-examining physicians when determining Plaintiff's RFC. However, Dr. Hefferman's report indicates that Plaintiff could be functioning at a lower level and have more pronounced limitations than those recognized in the RFC and by the non-examining physicians.

Also, it is not clear whether the ALJ considered Dr. Hefferman's report to be a medical opinion; rather, the ALJ seems to have treated it as medical evidence. (*See* R. 21–23.) Either way, however, the ALJ was required to sufficiently explain his reasoning about the value or weight placed on Dr. Hefferman's report and findings, which he did not do in this case. If the ALJ did not believe Dr. Hefferman's report rose to the level of opinion evidence or include medical opinions within it, the ALJ, at a minimum, should have explained his reasoning about why this evidence does not constitute a medical opinion.[4] On both counts, the ALJ's failure to adequately document his reasoning hinders meaningful judicial review in this case.

The undersigned concludes that the ALJ's error in this case was not harmless,[5] as Dr. Hefferman's findings and report about Plaintiff's cognitive functioning and impaired attention and concentration, if credited in whole or in part, could affect the RFC and, in turn, could very likely erode or change the occupational findings at Step 5, such as the hypotheticals the ALJ conveys to the vocational expert. *See, e.g.*, 20 C.F.R. § 404.1545 ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may

---

[4] The Commissioner characterizes Dr. Hefferman's report and findings as opinion evidence in her brief in opposition to Plaintiff's motion for summary judgment. (*See* Dkt. Entry No. 19.) That position underscores the ambiguity of the ALJ's characterization of the report in the written decision and his overall treatment of this evidence.

[5] The court in *Kneeland v. Berryhill*, 850 F.3d at 761–62, noted that: "[T]he Commissioner points to no cases in which an ALJ's failure to address an examining physician's medical opinion is deemed harmless. This is because, as explained above, such an error makes it impossible to know whether the ALJ properly considered and weighed an opinion, which directly affects the RFC determination."

reduce your ability to do past work and other work."). The failure to sufficiently address this evidence also calls into question the substantiality of the evidence underlying the RFC and findings at Step 5. The ALJ gave great weight to the opinions of the non-examining physicians, but he did not explain the weight he gave to the evidence provided by Dr. Hefferman. Lastly, the ALJ's failure to explain his treatment of this evidence, the weight given to it, and his reasoning for possibly rejecting it or giving it little weight precludes the Court from fulfilling its duty to perform meaningful judicial review, leaving the Court in a position of having to speculate inappropriately about the ALJ's reasoning.

The undersigned recommends, therefore, that this case be reversed and remanded based on the ALJ's legal error in failing to explain the weight he gave to the consultative examiner's report or his disposition of this evidence, which was not harmless. It is recommended by the undersigned that, upon remand, the ALJ engage in a complete evaluation of Plaintiff's impairments that takes into account the physical, cognitive, and psychological evidence, explain sufficiently the weight he affords the various medical opinions and evidence, including Dr. Hefferman's, and sufficiently document his reasoning for the weight afforded to the medical opinions and evidence. It is also emphasized that the Court makes no findings about the merits of Plaintiff's case for benefits and is not concluding the ALJ erred by finding that Plaintiff is not disabled.

## VI. CONCLUSION

### *Recommended Disposition*

Based on a review of the pleadings and record, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 17) be **GRANTED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 15) be **DENIED**, and the Commissioner's final decision to deny

benefits be **REVERSED AND REMANDED** for proceedings consistent with the findings and recommendations in this Report. It is further recommended that this case be closed

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy thereof. The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 13th day of July, 2017.

_____
Dorina Ramos
UNITED STATES MAGISTRATE JUDGE